Good morning, ladies and gentlemen. Our first case for this morning will be Chagoya v. Bartlett v. City of Chicago, and Mr. Geiger, we are ready to hear from you. You need to unmute. Thank you, Judge. Your Honors, counsel, may it please the Court. This Court should reverse the grant of summary judgment in favor of the City of Chicago, and against the nearly the entire SWAT team for the Chicago Police Department, because the district court ordered or made a finding that SWAT operators can perform their principal activity without taking their gear and weapons home. And, Your Honors, they cannot perform their principal activity without taking gear and weapons home. Why not? The first reason why not is a couple reasons found directly in the standard operating procedure that governs this, the operation of this unit. And the standard operating procedure says in a couple of places, page one. The SWAT team mandates that its members keep their equipment in a state of readiness to respond quickly to a critical incident. So, Mr. Geiger, I want to ask you kind of a fundamental question. Do you agree or do you not agree that there is a distinction between a job requirement and something that is integral and indispensable to the job? Well, I think, Judge, that the bus case kind of did away with the requirement angle. So, while there is a distinction, factually, I think legally, it is the plaintiff's obligation to prove that the activities that they are performing are integral and indispensable to the principal activity that they were hired to perform. So, how do you reconcile, then, the fact that, at this point, something on the order of 10 percent of the operators, five out of 50, do not, for one reason or the other, keep their gear, I'll just call it collectively, their gear at home? And even those who do, if they're called for special duty, sometimes might even need to travel from a place away from the home to the home. And finally, that there was a significant time period when they were not required to have it at home. I mean, the city has decided to require it now. Totally, no debate there. But integral and indispensable? Seems hard. Yes, Judge. Yes. And I think, Judge, the fact that there was, I believe, the testimony of Sergeant Lamb about several operators that kept their gear stored at Holman Square for a time, he couldn't name any of them. So, I don't think that's necessarily a good fact to rely on. The fact remains, you know, the district court relied on the fact that one operator named Cano, C-A-N-O, kept his rifle only at Holman Square on a truck. And that he, the rest of his gear, the rest of the remainder of the 80 pounds, he took home every day. And so, I guess the ways that we demonstrate, aside from the standard operating procedure, saying they have to be in a state of readiness, this is a SWAT team. They have to be quick. It says it right there. They have to be quick. The standard operating procedure also says that they have to provide a rapid, systematic response. In fact, that's all true. But they did do that with the truck taking the equipment out before they changed the rule. And furthermore, I mean, just to be clear, you're talking about days in which they're not called out. Because the city does pay them, or they are paid by a relevant entity, if they're called for special duty. And indeed, from the minute the call goes out, not even the minute they take it. So they're fully compensated for time when they actually do have to pull together all of the necessary equipment and go to a site. Well, yeah, they are fully compensated when they have to pull it together and go to a site. They are not fully compensated for keeping that gear in a state of readiness. There's all sorts of things that employers require that people don't get paid for under the terms of the Portal to Portal Act. Employers require you to come to work, for example, but you don't get paid for commuting. Sure, Judge. And you are correct. And a good example of what you just said is that Brand v. Comcast case. There you have cable repairmen who take home a van. They're required to check in on their company computer, see what their assignments are going to be, and have everything ready to go. Okay? And they don't get paid for that. And that was the ruling. Now, we don't have, I defy, is there a case out there where an employee is handling as much gear and has to handle it as these SWAT officers do? This is at minimum 80 pounds. If you add a sniper rifle into the mix, and a lot of them carry sniper rifles in addition to the machine guns, you're now looking at well over 100 pounds of gear. There is no case out there, I would submit, nationwide, Judge, where an employee has to deal with this amount of equipment. Why is the weight a relevant factor? I mean, that I don't understand. Sure. It's relevant because you have to move multiple items that weigh a lot from your vehicle into your home, into a gun safe, in the case of the machine gun. And these things have to be kept under lock and key. These all take time. These are not small bags. These are not, this isn't a briefcase. And there are cases out there about briefcases, about things you have to carry, a shoulder bag, for instance. That's not this case. This case are huge, large bags full of gear that needs to be cared for, and a machine gun, at minimum. Some of them have breaching shotguns. Some of them, I mentioned earlier, have sniper rifles. This is a lot of stuff. It takes time to deal with this. Mr. Geiger, does the record reflect any type of static statement or conclusion about the extent to which a rapid response is required? Meaning, must the SWAT team always be in a rapid mode, or are there situations where it's less than a rapid mode? Judge, when there's a critical incident and an all-call, it has to be rapid. And I think in the record, there's this discussion of a one-hour response time at a maximum. And I believe Sergeant Kariakis testified that that's a national standard in his deposition, and that that is something that they do their best to adhere to because a rapid response counts. In 2018, there was a mass shooting at Mercy Hospital. That was a SWAT officer that showed up with a rifle and killed the shooter. They have to be there quickly. But a lot of the time, that's handled by the on-duty squads. I mean, the city arranges for that. What you're talking about are the extraordinary circumstances where the two groups who are on duty in any given time can't handle it. Yes. And I'm also talking about, you know, how do we know that this is integral and indispensable, that unloading, loading, and storing your gear? Okay, well, for one, the city pays them 15 minutes at the beginning of a tour of duty and 15 minutes at the end of a tour of duty to do just that, to move their gear from their whatever vehicle they brought to Home and Square to if they're going out on patrol in one of the Tahoes that they use, they call them heavy weapons vehicles. But they give them 15 minutes at the beginning and the end of the tour to do exactly what they're doing when they're off duty at home, exactly the same thing. So why is it paid in one circumstance but not the other? So what worries me about your theory is that I think that there are many things in different lines of work that people do at home, whether it's staying within a certain number of miles at home, whether it's keeping, you know, checking e-mails occasionally or having a cell phone to make sure that there's no extraordinary duty. You might be the kind of person who shovels snow from the roads and it's unpredictable, just as it's unpredictable for your clients when they may be needed. And under the continuous workday rule, if we were to say that the necessity of doing some work at home is enough to trigger the right to compensation, then of course it includes all the commuting time. It includes everything under the continuous workday. And I just think that the law seems to have drawn a tighter line than the one you are proposing. Well, Judge, this is, no mistake, this is a continuous workday case in our view. I understand that. That's why I mentioned it. Right. Okay. And so we get to the, you know, the district court finding that they can do this job. The district court expressly found they can perform this job without taking their gear and weapons home. And the point that one of the biggest points that I wanted to get to was the fact that in 2017 we tried it. The plaintiffs tried to store their gear and weapons at home and square. And every single member of the SWAT team signed a report saying in several weeks we are taking you up on your offer, City of Chicago, to store all of our gear and all of our weapons at home and square. We're giving you lead time because we don't believe this is correct. We don't believe this is true. And we don't want to endanger anybody's safety. So we'll give you several weeks. But we're going to give you lead time. We're going to store everything there. And what happened? What happened was the city immediately ordered these officers, no, you are not going to store anything here. You will take your things home. You will store them there. And they got all of the officers now have take-home vehicles to do just that. Nobody stores their weapons or gear at home and square. Nobody is allowed to store their weapons or gear at home and square. The fact is it's obviously indispensable and integral to their functions of responding quickly and rapidly and systematically to critical incidents to have their things with them. And having their things with them means that gear has to be in a state of readiness when they go home. When they get home, they have to put it where it belongs, where it's required to be in the case of the machine gun. Now, pre-2017, the city of Chicago was basically having the SWAT team carry its machine guns around. And you couldn't, if you were a SWAT team member, before they gave you a take-home vehicle, you couldn't stop for a parent-teacher conference on the way home. You couldn't stop to go to your kid's baseball game. You couldn't do any of that. Because the machine gun can never be unattended in the vehicle. So they co-opted all of these plaintiffs' vehicles for years and years. And they just, now they want to just kind of forget about what happened there. Okay, I'm just going to remind you, Mr. Geiger, that your time is running down. I know you wanted four minutes, which you've already partly used. It's up to you. You can continue arguing or save some time. I'd like to save one minute, if that's okay, Judge. Okay, so watch the clock. I will. So the last thing I want to talk about was the case that the judge relied upon. And that's Balestrieri v. Menlo Park, the one out of the Ninth Circuit. And the district court came to the conclusion that, like the firefighters in Menlo Park, the SWAT officers here are two steps removed from doing their job. And I would submit to this court, that is absolutely wrong. The Menlo Park firefighters, remember, would get a call to volunteer for an overtime shift either at their station or at a visiting station. And they could take it or they could not take it. And they kept their gear at work. And their gear was nothing like the gear here, as much as it was just what they call turnout equipment or bunker gear. And in any event, they're two steps away because they had to go to the station to fight fires. Our guys can go right from home in a state of readiness with their gear to a critical incident. They are always one step removed. Thank you. Thank you, Mr. Geiger. Ms. Hornstra. Good morning, Your Honors, and may it please the court. The SWAT operators, who are the plaintiffs in this case, are part of a specialized police unit. And the principal duties they are employed to perform include providing a tactical response to critical and high-risk incidents, performing patrol duties, and providing dignitary protection. In this case, the plaintiffs are seeking compensation for other routine activities before and after their regular shifts. They claim they're entitled under the FLSA and the Illinois minimum wage law for the time they spend during their regular commutes between their homes and the SWAT unit's headquarters at Homan Square while transporting weapons and equipment in their vehicles and for time spent carrying those items between their vehicles and their homes at either end of their commute. But those are not activities that the plaintiffs are employed to perform, and they're not integral and indispensable to their principal duties. Accordingly, the district court correctly granted summary judgment for the city on plaintiffs' claims seeking overtime compensation for their off-duty activities. Now, it's important to note, and Judge Wood, you noted this in some of your questions to Mr. Geiger, it's important to note that the off-duty activities for which plaintiffs are seeking compensation here are distinct from any time they spend actually responding to an off-duty call-out. Any SWAT officer operator who responds to an off-duty call-out and agrees to participate is paid from the time of the first call that goes out seeking operators to respond through the end of that operation. So during that entire time, operators on duty, meaning that under those circumstances, they're paid for time to carry equipment between their homes and their vehicles, to travel to the site for whatever they're called to do at the site of the incident, and then for travel time afterward, as well as briefings. And for all of that, they earn overtime compensation. But what they're seeking in this case is also being paid overtime for their daily commutes and time spent carrying items between their homes and their vehicles. Ms. Hornstrad, can I ask you a question about standard of review? I mean, here's this phrase, integral and indispensable, to the principal activities for which they're employed. And I want to know whether you think that's something that the court just decides, evaluating all of the evidence in the record, or whether there's some deference owed to the employer's definition of what's integral and indispensable versus what the employee thinks. How do we tackle that question? I don't recall any language in the case law about deference to the employer's determination of what is integral and indispensable. It is certainly something that can be and often is decided as a matter of law, taking into account the record and applicable case law. And in this case, we know based on the record that integral and indispensable means that it's so tied up with the employee's principal duties that it cannot be dispensed with if the employee is to carry out their duties. We know in this case that it's not necessary because, as Judge Wood, you pointed out earlier, in the past, the practice was different. There is no question that the SWAT operators can carry out their principal duties without bringing equipment to their homes. It's been a matter of changing practice. There are going to be pros and cons to different ways of running a SWAT unit. In some other cities, they have 24-hour on-duty coverage. There was testimony that, in the past, the practice of having the equipment truck take — it requires a staff person to have all the equipment ready on that truck, but it has the advantage of having everything there and ready for the operators when they get there. It's been the considered judgment of the current SWAT leadership and also the operators' preference that they be able to respond directly from their homes when they do a pullout. But there are also cases — I'm sorry? The officers have certain physical fitness requirements, do they not? They do, yes. And, in fact, part of the time, they get about 90 minutes as part of each shift to work out during their shifts. So they are paid for keeping physically fit? They are, yes. Sometimes, instead of doing that, they might do shooting practice at a firing range, but all of that — that sort of readiness is part of their on-duty compensation. How do you distinguish that from the situation we have before us today? Well, keeping their equipment in a state of readiness is something that they do during their regular shift times. They're given time to inspect their equipment, to clean weapons. The off-duty activities that we're talking about is really just driving to and from — and then there's a few items that they can't leave stored in their vehicles when they — if they have a take-home car and they take them home, they have to take their night-vision goggles in. They can't — no CPD officers are allowed to leave weapons in their vehicles unattended and their police radio. But that's not a matter of maintaining those things in a state of readiness. That's a matter of just bringing them into the home and not leaving them in the vehicle. Now, Plaintiff's Council has said that there's a dispute about whether the operators are actually required to bring more than just the goggles, weapons and radios into their homes. In fact, the testimony on that from Lieutenant Lamb is unequivocal that there's never been a requirement to take more than those three things in. They point to, one, a standard operating procedure document that was put out in 2016. It's actually unclear if it was put out. But either way, that was only a very short time before a memo from Lieutenant Georges, who clarified to all the SWAT members that the only three things that had to be taken in from their vehicles were the goggles, the guns and the radio. So, you know, we're not actually talking about carrying 80 pounds of equipment in. But do you think that the amount of equipment has really — is outcome determinative on this at all? I don't — I actually don't think it is, but — Plus, why not? That your opponent relied a great deal on that during his oral presentation. Why isn't that important? I mean, even if there was a lot of equipment and there was heavy lifting that had to be done, it's still — it's not necessary for the SWAT operators to do the principal activities of their job, so it's not integral and indispensable. But as an additional matter, it certainly, you know, doesn't help the plaintiff's case here that what they call work — you know, again, not everything — not all work-related activities constitute work that have to be compensated under the FLSA. So, you know, carrying items from your car to your home after your commute, before your commute, doesn't constitute compensable work unless it's necessary. I ask the question because I have difficulty seeing conceptually, given the policies and the wording of the act, why it's any different for the officer to be told to bring his machine gun into the house and put it in a safe than my telling my law clerk to take his government-owned computer out of the backseat of his car and put it in a safe place in his house where the children can't get at it. I mean, is there conceptually any difference under the — I don't think so. It's storage. You know, it's the sort of thing that's, you know, among various activities that people are sometimes required to do by their employees. And as the — Simply fulfilling a fiduciary obligation to take care of equipment that was somebody else's equipment that was entrusted into your care. That's correct. And in the fact — you know, and the fact that something is — even if it's required by an employer, that's not a disposit — that's not determinative of whether something is integral and indispensable to their job duties, which the Supreme Court made clear in Busk. You know, there, the court specifically stated that the Ninth Circuit had erred by focusing on the fact that the employees at the Amazon warehouse were required to go through security screenings. That was something the employer absolutely required. It was in the employer's interest. It was important to the employer, but that wasn't part of the job duties that the employees were employed to perform. And again, we know from past experience that operators have been able to do their jobs. There are different ways to carry out SWAT units' mission. This is what SWAT leadership has decided is the optimal way to do this now. So — You know, and there actually — I'm sorry. Is it fair to say, then, that your argument is that the actual job, the activity for which these people are employed, is the response to situations or the diplomatic protection or the other things that we see in that list? And when the city has one storage policy versus another, it's just making tradeoffs about the efficiency with which its SWAT team can perform those duties. Absolutely. And, you know, it's a matter of tradeoffs, balancing resources, public safety, and the fact that the change from time to time and what the officers expect to do doesn't change the nature of the activities that they are performed to do and what is integral and indispensable to their — Now, you mentioned in your brief that no one until late in the day had ever submitted overtime slips for this work. Is that of any particular importance? I mean, they probably knew that it wasn't regarded as compensable by the city. Yeah, I think — I mean, that certainly goes to the claims under the Illinois Wage Payment and Collection Act, as far as any understanding. Which, you know, we'd be happy to rest on our briefs on that issue. It wasn't brought up in an earlier part of the argument or in the ply brief. You know, there were, you know, some members of the plaintiff class, particularly Plaintiff Bartlett, who were agitating because they had used their personal vehicles in the past and wanted to be paid for the use of their personal vehicles. Was that in the nature of reimbursement, or was that in the nature of continuous workday? So, like, were they asking for mileage for using their personal vehicles, or were they saying, because we're using our personal vehicles, we're on the clock? You know, I would need to clarify the record on that. I think Mr. Geiger might actually be in a better position to answer that, but — And I don't know what — I know that Mr. Bartlett made, you know, some complaints in emails to his supervisors about this for a reason why, that they should be given department vehicles. I don't know about formal claims that were made on that. Ms. Hornstra, wouldn't your argument about the city making determinations on tradeoffs for efficiency, wouldn't that have more traction if there was consistency, if there weren't exceptions, that certain SWAT operators were allowed to do certain things that others were not? I don't think so, because although there's — you know, it's — the thought now is that the best way to do this is for operators generally to have take-home CPD vehicles, to bring their rifles home. You know, there are reasons for exceptions to that, particularly where, you know, someone doesn't have a safe place to store a weapon at home. Those operators still can and do respond to call-outs by going to Home and Square. And, I mean, it just — it sort of illustrates the nature of the tradeoffs and the fact that the job can be done in different ways, and that there have been exceptions made. And just quickly to Mr. Geiger's point, sort of taking issue with the idea that anybody has been storing weapons at Home and Square, they have. Lieutenant Liam clearly testified there had been five employees. Plaintiff Bartlett himself at times stored equipment there. Patrick Layden said that when the vehicles were taken away, I think in 2011, 2009, that some operators started leaving equipment there. So there's no dispute that it has been an option on a case-by-case basis for operators to do so. I see my time has nearly expired. We would rest on our briefs with regard to the Illinois Wage Payment and Collection Act claim, and we would ask that you affirm the judgment of the district court. Thank you. All right. Thank you. Mr. Geiger. Thank you, Judge. Judge, a couple of things. One, to your question about whether integral and indispensable is a question of law or a question of fact. I think in Baker v. Barnard construction, the 10th Circuit case that we cited, there is a discussion of that and the fact that the precise nature of the employee's duties is a question of fact. And unfortunately, that was wrongly resolved by the district court in this case. Also, counsel mentioned in her argument that other cities have 24-hour coverage. She's right. Chicago did not have 24-hour coverage until 2018. This lawsuit was filed in 2014. That obviously shows, again, that having your gear with you at home in a state of readiness is integral and indispensable if you're going to respond to an incident while there's no SWOT coverage. Is that fact in the record? I actually looked when I was reading these briefs to find something about whether there was 24-hour coverage or not, and I couldn't find anything. Judge, we could certainly submit a citation. If it's a question of fact, you can't. You're stuck with the record you have. No, to the record. I believe it is in the record. I believe it's in the depositions. I didn't anticipate it becoming an issue. All right. No problem. Don't worry about it. Thank you, Judge. All right. I appreciate it. Thank you. Thank you very much. Thanks to both counsel. The court will take the case under advisory.